IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01229-MSK-KLM

ROSENDO HERRERA,

     Plaintiff,

v.

ARISTEDES ZAVARES,
THEODORE LAURENCE,
PATTY L. BEECROFT,
JOSEPH FORTUNATO, and
BEVERLY DOWIS,

     Defendants.

_____

**OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS**
_____

     **THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss
(**# 33**), Mr. Herrera's response (**# 60**), and the Defendants' reply (**# 62**); Mr. Herrera's
Objections (**# 52**) to the Magistrate Judge's April 5, 2010 Order (**# 44**) denying Mr. Herrera's
request (**# 40**) for appointment of an interpreter; and Mr. Herrera's Motion to Reinstate (**# 61**)
dismissed Defendant Webster, which the Court treats as a motion for reconsideration of its April
22, 2010 Order (**# 51**) adopting the Magistrate Judge's Recommendation (**# 35**) that claims
against Mr. Webster be dismissed for failure to effect timely service.

<h2 style="text-align:center"><u>FACTS</u></h2>

     The following facts are derived from the Second Amended Complaint (**# 19**).  Mr.
Herrera, an inmate of the Colorado Department of Corrections ("CDOC"), was injured in June
2003 when he fell down some stairs.  At that time, he was diagnosed by unidentified members of

the medical staff at the Arapahoe County Detention Facility as having a "severe spinal injury which would require corrective surgery."  As a pretrial detainee, he was provisionally treated with hot towels and pain medication, with the anticipation that he would shortly be transferred to a regular CDOC facility where arrangements for corrective surgery would be made.  He was officially assigned to the Fremont Correctional Facility in February 2004, where he continued to receive treatment in the form of hot towel applications, muscle relaxants, and steroid injections. He complained to medical staff that he had previously been diagnosed as needing surgery, but to no apparent avail.

In November 2004, while assigned to the Arkansas Valley Correctional Facility, Mr. Herrera fell and re-injured his back.  He was seen by Defendant Laurence, a physician's assistant, who stated that – notwithstanding Mr. Herrera advising him of the previous diagnosis of a need for corrective surgery – Mr. Herrera did not need surgery, that his symptoms of pain and decreased mobility were a result of arthritis, and that the current treatment regimen initially prescribed by the Arapahoe County Detention Center staff was appropriate.  Later, Mr. Herrera was seen by Defendant Beecroft, a doctor, who concurred with Mr. Laurence's opinion that Mr. Herrera's discomfort was the result of arthritis, and that treament consisting of muscle relaxants and pain pills was appropriate.  In April 2005, Dr. Beecroft examined an x-ray of Mr. Herrara and concluded that he also suffered from disc problems, for which she prescribed hot towel applications in addition to existing treatment, and further prescribed crutches to assist with Mr. Herrera's mobility, which had deteriorated over the time period.

In December 2005, Mr. Herrera was transferred to the Crowley County Correctional Facility.  Medical staff there obtained x-ray and MRI examinations of Mr. Herrera, and

eventually recommended surgery for his condition.  Mr. Herrera contends that a request for

surgical authorization was made, but unspecified "authorities of CDOC refused to approve the

request."

In November 2008, Mr. Herrera was transferred to the Sterling Correctional Facility,

where he was seen by former Defendant Webster, a physician's assistant.  Mr. Webster re-

diagnosed Mr. Herrera's condition as arthritis and revoked Mr. Herrera's prescription for

crutches.  (Upon filing a grievance, Mr. Herrera was allowed to continue to use one crutch.)  Mr.

Webster also concluded that the recommendation of surgery was unwarranted.  Nevertheless,

Mr. Herrera was considered by CDOC authorities to be entitled to a variety of "special

accommodations related to [his] back injury and mobility issues," including assignments to

lower bunks, and assistance of fellow prisoners for certain tasks, among other things.  In or about

February 4, 2009, Mr. Herrera filed a grievance concerning the denial of surgical authorization.

Thereafter, he contends that Defendant Fortunato had all of his special accommodations removed

as retaliation.  Mr. Herrera states that he contacted Defendant Dowis and "asked her to

intervene" to have his crutches and medications returned, but Ms. Dowis did not respond to his

request.

Mr. Herrera asserts three claims for relief: (i) violation of his 8th Amendment rights under

the U.S. Constitution, as a result of the Defendants' deliberate indifference to his serious medical

needs, in violation of 42 U.S.C. § 1983; (ii) common-law medical malpractice against

Defendants Laurence, Beecroft, and Fortunato; and (iii) a claim that Defendant Fortunato

demonstrated "maliciousness" and "depravity of mind" in examining Mr. Herrera and

concluding that he had no need for any medical treatment or accommodations, although it is not

clear to what extent this claim differs from Mr. Herrera's 8th Amendment claim against Mr. Fortunato.

**ANALYSIS**

**A. Standard of review**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis. A pleader is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949.

The cases make clear that it is <u>facts</u>, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Id.* at 1949-50. Moreover, the facts pled must demonstrate a "plausible" claim, that is, one in which the pleader has shown more than just an abstract "possibility" that the defendant has engaged in actionable misconduct.[1] *Id.* One way in which the Court might conduct its analysis is to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

Mr. Herrera appears in this action *pro se*. Accordingly, the Court reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se*

---

[1]The Supreme Court took pains to ensure that the word "plausible" is understood to mean that the plaintiff has a demonstrable and concrete belief that a wrong has been committed and the defendant is the person responsible, as opposed to a set of facts in which a wrong might possibly and hypothetically be ascertained, and the defendant might, hypothetically, be a person who might have been responsible for that wrong. For example, in *Twombly*, the Court observed that the plaintiff in an antitrust case had sufficiently pled as a fact that two defendants had engaged in "parallel behavior." However, it found that while parallel conduct <u>might</u> be consistent with the required element of an agreement between the two defendants, "it was not only compatible with, but indeed was more likely explained by, lawful unchoreographed free-market behavior." 550 U.S. at 567. Thus, "the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement." *Id.* at 570.

Cases such as *Twombly* and *Iqbal* make clear that the "plausibility" requirement is not an invitation to this Court to speculate as to whether well-pleaded facts alleged by the pleader are likely to be proven true or not. In this sense, "plausible" is not the synonym of "believable."

status does not relieve Mr. Herrera of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat him according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

**B. Deliberate indifference claims**

The 8th Amendment to the United States Constitution prohibits "cruel and unusual punishment." Among the punishments prohibited by the 8th Amendment are those amounting to "wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Where a prison official exposes an inmate to unnecessary suffering by denying medical care, the 8th Amendment may be violated. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). However, the Constitution is only implicated in situations in which prison officials act purposefully to impose unnecessary pain on an inmate; "inadvertent" denials of care or negligent diagnosis or treatment does not rise to the level of an 8th Amendment violation. *Id.* at 106

Thus, to adequately plead a constitutional claim for deliberate indifference to medical needs, an inmate must allege: (i) that he suffered from a serious medical need – that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it. *See e.g. Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The subjective component requires an examination into the defendant's actual state of mind. To satisfy this element, the inmate must

plead facts that show that the defendant both "actually knew of" and "deliberately disregarded" the fact that the inmate was suffering from a serious medical need.  *Boles v. Dansdill,* 361 Fed.Appx. 15, 18 (10th Cir. 2010) (unpublished), *citing Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  It is not sufficient for the inmate to plead facts showing a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives.  *Ramos*, *id.* at 575.  Rather, the inmate must show that a defendant "prevented [him] from receiving recommended treatment" or that the defendant "denied [him] access to medical personnel capable of evaluating the need for treatment."  *Id.*

In light of these principles, the Court turns to Mr. Herrera's particular allegations against each of the Defendants.  Chronologically, the first Defendant identified by Mr. Herrera is Mr. Laurence.  In November 2004,[2] after falling in the kitchen and reinjuring his back, Mr. Herrera was "interviewed and examined" by Mr. Laurence.  Mr. Herrera contends that "without taking x-rays or performing any physical or instrumental tests," Mr. Laurence "advised [him] that he would be fine."  Mr. Herrera explained that he continued to be in severe pain and inquired about the surgery that was recommended in 2003, but Mr. Laurence insisted that he did not need surgery.  Mr. Herrera had "several other scheduled appointments" with Mr. Laurence, but Mr. Laurence "recommended only that [he] continue with the same treatment as before" – hot towel applications and muscle relaxants.  Eventually, Mr. Laurence diagnosed Mr. Herrera as having "arthritis in his lower back," which Mr. Laurence deemed to be the cause of his pain.

These allegations fail to state an 8th Amendment claim against Mr. Laurence.  Assuming

---

[2]The Court has some doubt that claims arising from treatment denied in 2004 and 2005 can possibly be timely, but because the Defendants have not raised the statute of limitations as a basis for dismissal, the Court does not entertain that question.

that Mr. Herrera's back injuries were, objectively, serious medical needs, thus satisfying the first

element of the claim, Mr. Herrera has not alleged facts that show that Mr. Laurence exhibited

deliberate indifference to those needs.  Mr. Laurence admittedly "examined" Mr. Herrera (albeit

without conducting "physical or instrumental tests") and considered Mr. Herrera's complaints of

pain and the fact that a medical officer had previously recommended surgery, but instead

concluded that non-surgical treatment was warranted.   It is undisputed that Mr. Laurence

attempted to diagnose Mr. Herrera's condition and prescribed a course of treatment that he

believed was appropriate.  The fact that Mr. Laurence may have been mistaken in his diagnosis

or that his prescribed treatment eventually proved to be ineffectual does not amount to an 8th

Amendment violation.  Mr. Laurence clearly sought to address Mr. Herrera's medical needs; he

did not simply ignore them, as would typically be required for 8th Amendment relief.[3]

The apparent key to Mr. Herrera's claim that the treatment he received from Mr.

Laurence (and others) was deliberately indifferent is that an unidentified medical official

Arapahoe County opined in 2003 that his injury "would require corrective surgery."  Mr. Herrera

appears to believe that, once that diagnosis was made, it was incumbent upon CDOC to follow

through and that subsequent medical personnel were not permitted to disagree with that

---

[3]Some cases, such as *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) and *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n. 7 (10th Cir. 2001), find that an inmate adequately alleged an 8th Amendment claim despite having received repeated examinations and treatment from medical providers.  These cases can best be explained by an observation in *Jervis v. Mitcheff*, 258 Fed.Appx. 3, 6 (7th Cir. 2007) (unpublished).  *Jervis* explains that "dispensing a modicum of treatment [does not] automatically preclude a deliberate indifference claim if a finder of fact could infer that the care provided was so inadequate as to constitute intentional mistreatment." *Id.*  Thus, while good-faith but ineffectual treatment does not give rise to 8th Amendment relief, perfunctory treatment that is barely distinguishable from outright indifference might amount to a violation.  Here, Mr. Herrera has not alleged facts that would show that Mr. Laurence's prescribed treatments rose (or perhaps "fell") to that heavy standard.

conclusion.[4]  Mr. Herrera does not cite, and the Court is unfamiliar with, authority that requires subsequent medical personnel to blindly abide by diagnoses and prescriptions previously issued by medical personnel examining the inmate.  The crux of an 8th Amendment claim is a defendant's "failing to take reasonable measures" to abate harms posed by an inmate's medical needs – that is, measures that the medical official providing treatment <u>subjectively</u> believes are reasonable.  *Hunt*, 199 F.3d at 1220.  The fact that a prior medical officer has recommended a certain course of treatment might warrant 8th Amendment relief where a subsequent medical officer refuses to supply such treatment knowing that it should be delivered, but the subjective component of the claim is not satisfied where the subsequent medical officer harbors a good-faith belief that the prior diagnosis and treatment was inappropriate or unnecessary.  *Compare Hunt*, 199 F.3d at 1223-24 (finding that inmate stated 8th Amendment claim where subsequent doctor "did not believe there was a need for [previously-prescribed] insulin" and thus did not provide it, and where "certain medically-recommended procedures were not performed"; however, the court did not indicate whether inmate had pled facts showing that subsequent doctor instead reached a different diagnosis than prior doctors had).

In circumstances where the subsequent medical officer disagrees with a prior provider's diagnosis, it would seem appropriate to require the inmate charging the subsequent officer with

---

[4]Mr. Herrera argues that Mr. Laurence, as a physician's assistant, "was not qualified to second-guess a doctor's diagnosis." The cases cited by Mr. Herrera do not stand for this proposition; indeed, none of the four cited cases even mention the term "physician's assistant" in the substantive discussion, much less indicate which ranks of medical personnel are required to defer to the diagnoses of others.  *But see Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (finding that doctor's failure to "follow the advice of the specialists" who were treating the inmate could give rise to deliberate indifference claim).  Moreover, Mr. Herrera has not provided factual allegations that would indicate that Mr. Laurence was not empowered by CDOC with the authority to independently diagnose inmates' medical conditions.

violation of the 8th Amendment to allege facts showing that the subsequent officer's diagnosis and treatment were "so far afield of accepted professional standards as to raise an inference of deliberate indifference." *Zackery v. Mesrobian*, 299 Fed.Appx. 598, 601 (unpublished) (granting summary judgment to prison doctor who incorrectly diagnosed and treated inmate as having arthritis, despite fact that prior doctor correctly believed inmate's injury was actually a torn meniscus), *citing Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). In *Zackery*, the court explained that "a defendant's decision to ignore a specialist's orders can raise an inference of deliberate indifference," but the inmate must come forward with "evidence to raise such an inference." *Id.* at 601. Thus, an inmate must allege facts showing that the defendant's disagreement with another medical provider's judgment arises from something other than the defendant's good-faith medical judgment. *Id.*

Here, Mr. Herrera does not allege that Mr. Laurence's own examination and diagnosis was "so far afield of accepted professional standards" that the Court could infer that his disagreement with the unnamed Arapahoe County doctor's recommendation of surgery was indicative of Mr. Laurence's deliberate indifference. Indeed, as noted above, Mr. Herrera admits that several other medical personnel independently reached the same conclusions as Mr. Laurence. Prior to Mr. Herrera's arrival at Arkansas Valley, medical staff at the Fremont Correctional Facility examined him and concluded that muscle relaxers and injections, but not surgery, were appropriate treatment for his condition.<sup>5</sup> Likewise, Dr. Beecroft largely concurred with Mr. Laurence's diagnosis of arthritis and treatment using non-surgical methods, as did Mr.

---

<sup>5</sup>Admittedly, Mr. Herrera's diagnosis at the Fremont Correctional Facility preceded his re-injury to his back while at Arkansas Valley. Then again, the 2003 recommendation for corrective surgery, upon which Mr. Herrera relies heavily, also predates that re-injury.

10

Webster following his examination of Mr. Herrera several years later. At best, then, Mr. Herrera has merely alleged that his condition was one that prompted some difference of opinion among medical practitioners as to the appropriate diagnosis and treatment. Under these circumstances, Mr. Laurence's conclusion that Mr. Herrera was properly treated with non-surgical alternatives cannot give rise to a claim for deliberate indifference. Thus, Mr. Herrera's 8th Amendment claim against Mr. Laurence is dismissed.

Next, Mr. Herrera claims that Dr. Beecroft violated his 8th Amendment rights. Mr. Herrera alleges that he complained of continuing pain to Dr. Beecroft and informed her of the prior recommendation of corrective surgery. Dr. Beecroft physically examined him and reviewed his records, concluding, as did Mr. Laurence, that Mr. Herrera was suffering from arthritis. Dr. Beecroft modified the treatment regimen Mr. Herrera was undergoing by adding steroid injections, along with muscle relaxants, pain medications, and hot towel applications. (Mr. Herrera states that these treatments provided him "only temporary relief.") Dr. Beecroft did ultimately decide to send Mr. Herrera for an x-ray, which revealed "disc alignment problems," but Dr. Beecroft did not deem that result to warrant a change in treatment, much less surgery. She did, however, issue a prescription that Mr. Herrera be allowed to use crutches to increase his mobility.

These allegations fail to state an 8th Amendment claim for the same reasons that the claim against Mr. Laurence are deficient. Mr. Herrera indisputably received medical attention and considered treatment from Dr. Beecroft, defeating any contention that Dr. Beecroft was deliberately indifferent to his back injury. The only real complaint Mr. Herrera seems to have with Dr. Beecroft's treatment is the same as he has with Mr. Laurence's: neither provider

concurred with the prior recommendation of surgery, nor was able to afford him treatment that ameliorated his symptoms. For the reasons explained above, the Court finds that Mr. Herrera has not come forward with facts sufficient to allege that this disagreement was so far outside accepted medical practice as to warrant an inference that it was the result of deliberate indifference.[6] Accordingly, Dr. Beecroft is also entitled to dismissal of the 8th Amendment claim against her.

Next, Mr. Herrera complains of actions by Dr. Fortunato. He contends that on May 29, 2009, Dr. Fortunato, without having conducted any physical examination, concluded that "there is nothing wrong" with Mr. Herrera and directed that Mr. Herrera be taken off all treatments and he was currently receiving. (As discussed herein, Mr. Herrera believes that Dr. Fortunato's conclusion was retaliation for Mr. Herrera having filed a grievance against another medical staffer on or about December 15, 2008.) In June 2009, CDOC engaged in a records-based review of Mr. Herrera's status under the Americans With Disabilities Act, and as a result of Dr. Fortunato's May 2009 diagnosis, Mr. Herrera was classified as not having a disability relating to mobility. This classification resulted in all accommodations that had previously been granted to Mr. Herrera for his condition – *e.g.* use of crutches, assignment to a medically-designated facility, lower bunk privileges and assistance by other inmates, etc. – to be withdrawn.

Taking these allegations as true, Mr. Herrera has adequately pled an 8th Amendment

---

[6]The fact that an x-ray ordered by Dr. Beecroft revealed disc problems does not change this analysis. Mr. Herrera does not allege facts that would show that "professional standards" would have dictated that such a diagnosis be met with some other form of treatment. Thus, Dr. Beecroft's conclusion that the x-ray results did not warrant a change in treatment does not demonstrate her deliberate indifference to the revelation of disc problems in addition to the diagnosis of arthritis.

claim against Dr. Fortunato.  It is not entirely clear from Mr. Herrera's allegations whether Dr. Fortunato was purporting to give an actual diagnosis of Mr. Herrera's conditions when he concluded there was "nothing wrong" with Mr. Herrera.  Assuming he was, that diagnosis – which is flatly contrary to diagnoses previously issued by numerous medical providers and apparently based only on a review of Mr. Herrera's records, not on any physical examination – might arguably be said to be "far afield of professional standards."   This is not a situation in which Dr. Fortunato concluded that Mr. Herrera's pain was resulting from a different malady than another medical provider had diagnosed, such that doctors might have differing opinions as to the source of symtpoms; this is a situation in which Dr. Fortunato concluded that there was "nothing wrong" with Mr. Herrera, essentially disregarding Mr. Herrera's symtpoms entirely.  In this situation, one might reasonably expect that professional standards in this circumstance would require Dr. Fortunato, before reaching a conclusion that appears to fly in the face of years of complaints by Mr. Herrera and diagnoses by other providers that appeared to acknowledge a physical cause for Mr. Herrera's claimed symptoms, to consult with Mr. Herrera himself.  His failure to do so, arguably, could give rise to an inference that his "diagnosis" reflected simple deliberate indifference to Mr. Herrera's medical needs.  Thus, the Court denies Dr. Fortunato's request to dismiss the 8th Amendment claim against him.

Mr. Herrera's claims against Ms. Dowis allege that she is the Health Services Administrator at the Sterling Correctional Facility, which, according to Mr. Herrera, gives her "oversight of the [Sterling Correctional Facility] health services personnel," including Dr. Fortunato.  The claims against Ms. Dowis are especially brief.  Mr. Herrera contends that he complained in writing to Ms. Dowis of the various events that are recited herein.  He requested

Ms. Dowis to "intervene and instruct Dr. Fortunato . . . to reinstate his medications and return his crutches to him," as well as to authorize the surgery that had previously been recommended. Ms. Dowis never answered Mr. Herrera's letter.

In general, a supervisor cannot be liable for constitutional violations committed by her subordinates, simply by virtue of the supervisory relationship. However, courts addressing similar factual scenarios to that alleged here have concluded that, where a prison medical director has both a subjective awareness of inadequate treatment being provided to an inmate – by means of a communication from the inmate explaining the need for and lack of treatment – and the ability to intercede and correct that inadequate care, the official's failure to do so is itself a form of personal misconduct giving rise to 8th Amendment liability. *See e.g. Williams v. Prison Health Services, Inc.*, 167 Fed.Appx. 555, 558 (7th Cir. 2006) (unpublished), *citing Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996); *see also Ware v. Fairman*, 884 F.Supp. 1201, 1206 (N.D. Ill. 1995) ("without an allegation that plaintiff informed defendants of his need and requested an inhaler from defendants and was refused, or that he submitted a grievance report to defendants after they failed to respond to requests for an inhaler . . . this Court cannot conclude that defendants were deliberately indifferent to plaintiff's serious medical needs"). This is essentially what Mr. Herrera asserts here. Accordingly, Ms. Dowis is not entitled to dismissal of the 8th Amendment claim against her.

Finally, Mr. Herrera asserts an 8th Amendment claim against Mr. Zavares, who is described in the Second Amended Complaint as "the Executive Director of [CDOC]." Mr. Herrera's deliberate indifference claim against Mr. Zavares is entirely derivative, sometimes repetitively so. He contends that Mr. Zavares "has the responsibility for selecting a chief

medical officer who institutes policies and procedures under which medical contracts are awarded to individual medical providers, who in turn provide medical care to the inmate population," but that Mr. Zavares apparently failed to do so. Mr. Herrera asserts a variety of behavior to Mr. Zavares "upon information and belief," but does not state the facts that give rise to such a belief. Most notably, Mr. Herrera does not allege any facts that would indicate that Mr. Zavares was subjectively aware of Mr. Herrera's situation; that is, Mr. Herrera does not allege that he personally contacted Mr. Zavares about his situation or otherwise brought his situation to Mr. Zavares' attention. Without an allegation that would demonstrate Mr. Zavares' subjective knowledge of Mr. Herrera's situation (much less his conscious disregard thereof), Mr. Herrera has failed to state an 8th Amendment claim against Mr. Zavares.

### C. Common-law malpractice claims

Mr. Herrera's second cause of action appears to assert common-law and/or professional negligence against Defendants Laurence, Beecroft, and Fortunato. (Mr. Herrera does not purport to assert this claim against Ms. Dowis or Mr. Zavares.) With respect to those Defendants for whom the Court has dismissed Mr. Herrera's 8th Amendment claim – Mr. Laurence and Dr. Beecroft – the Court finds that dismissal of the only federal law claim asserted by Mr. Herrera against these individuals warrants the Court declining to exercise supplemental jurisdiction over Mr. Herrera's common-law negligence or malpractice claims against these Defendants. 28 U.S.C. § 1367(c)(3); *McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006).

Although the Court continues to exercise jurisdiction over federal claims asserted against Dr. Fortunato and Ms. Dowis, and thus arguably could continue to exercise supplemental jurisdiction over the state-law negligence claims Mr. Laurence and Dr. Beecroft under 28 U.S.C.

§ 1367(a), the Court finds that it is improvident to do so.  The primary factual disputes underlying malpractice claims against Mr. Laurence and Dr. Beecroft are entirely distinct from the factual disputes that underlie the federal claims against Dr. Fortunato and Ms. Dowis.  *See* 28 U.S.C. § 1367(c)(2) (allowing court to decline exercise of supplemental jurisdiction where "the [state] claim substantially predominates over the [federal] claim").  The malpractice claims require examination of the specific medical treatment that each individual Defendant provided.  That question, in turn, is entirely distinct from the 8th Amendment inquiry, which is concerned with treatment that was <u>not</u> provided, not with the quality of treatment that was provided.  *Estelle*, 429 U.S. at 104-05 (negligent treatment does not give rise to 8th Amendment liability).  Thus, because the facts underlying each malpractice claim are distinct from the facts to be considered under any remaining federal claims, the Court finds that it is not a prudent exercise of judicial resources for the Court to exercise supplemental jurisdiction over the common-law negligence/malpractice claims against Mr. Laurence and Dr. Beecroft.  Accordingly, the Court dismisses without prejudice Mr. Herrera's common-law malpractice claims against Mr. Laurence and Dr. Beecroft.

With regard to the remaining malpractice claim – against Dr. Fortunato – Dr. Fortunato contends that, among other things, Mr. Herrera's common-law claims are barred by Mr. Herrera's failure to timely file a Certicficate of Review as required by C.R.S. § 13-20-602.  Mr. Herrera's response to the motion does not address this argument.

It is undisputed that Mr. Herrera's common-law claim against Dr. Fortunato is one sounding in professional malpractice.   C.R.S. § 13-20-602(1)(a) requires that any plaintiff asserting a claim for professional malpractice file a Certificate of Review within 60 days of

serving the complaint.  The Certificate of Review consists of an affirmation by the plaintiff's

attorney, attesting that he "has consulted a person who has expertise in the area of the alleged

negligent conduct" and that the professional consulted "has reviewed the known facts [and] has

concluded that the filing of the claim . . . does not lack substantial justification."  C.R.S. § 13-20-

602(3)(a); *see also* § 13-20-602(3)(c) (imposing additional requirements where claim alleges

professional negligence of a physician).   The Certificate of Review requirements apply even

when the plaintiff is proceeding *pro se*, *Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App.

2002), and even where the plaintiff is an inmate, *State v. Nieto*, 993 P.2d 493, 505 (Colo. 2000).

More than 60 days have elapsed since Mr. Herrera served the complaint against Mr. Fortunato in

this action, and Mr. Herrera has yet to file a Certificate of Review or show good cause for an

extension of time to do so.  Accordingly, pursuant to C.R.S. § 13-20-602(4), the Court must

dismiss Mr. Herrera's malpractice claim against Dr. Fortunato.

### D.  Third claim against Dr. Fortunato

The Court is not entirely sure how to construe Mr. Herrera's third claim against Dr.

Fortunato.  When separately enumerated, the claim is described as "[Dr. Fortunato] acted

maliciously and/or with depraved [indifference] in [his] treatment of the plaintiff concerning his

serious medical condition."  Articulating the specific facts of the claim, Mr. Herrera explains that

he was afforded a variety of accommodations by CDOC as a result of his medical condition, and

that nevertheless, Mr. Herrera had filed a grievance against Mr. Webster regarding his treatment.

As Mr. Herrera was pursing that grievance, he was seen by Dr. Fortunato.  Dr. Fortunato

"diagnosed [Mr. Herrera] – without the benefit of his own physical examination – as having no

medical problems at all."  As a result of Dr. Fortunato's diagnosis, all of Mr. Herrera's

treatments and accommodations were withdrawn.  Mr. Herrera explains that "Dr. Fortunato maliciously and with a depraved mind, caused total abandonment of [Mr. Herrera's] medical needs."  He stated that Dr. Fortunato did so "to prevent [Mr. Herrera] from being recommended for the surgery he desperately needs."

On its face, this claim appears to be indistinguishable from Mr. Herrera's 8th Amendment claim against Dr. Fortunato: both claims assert that Dr. Fortunato acted purposefully to prevent Mr. Herrera from receiving needed medical care.  In this respect, the Court would dismiss Mr. Herrera's third claim as redundant of his 8th Amendment claim against Dr. Fortunato.

Dr. Fortunato believes that Mr. Herrera's third claim is one sounding in some form of retaliation, presumably under 42 U.S.C. § 1983 for Mr. Herrera having exercised his First Amendment rights to file a grievance against another medical staffer.  Although retaliation is not mentioned in Mr. Herrera's articulation of the third claim – indeed, Mr. Herrera's articulation of the claim attributes Dr. Fortunato's actions to attempting to prevent Mr. Herrera from obtaining surgery, not in retaliation for a grievance – Mr. Herrera's factual assertions in his first 8th Amendment claim (assertions that Mr. Herrera incorporates by reference in his third claim) make a passing reference to the fact that Dr. Fortunato's actions "are the result of or a reaction to the grievance" Mr. Herrera had filed against Mr. Webster.  Mr. Herrera's response to Dr. Fortunato's motion confirms that Mr. Herrera intends the third claim to be understood as a retaliation claim, and the Court examines it as thus.

To plead a claim for First Amendment retaliation, Mr. Herrera must allege: (i) that he engaged in activity protected by the First Amendment; (ii) that he suffered some adverse action; and (iii) that there is a causal relationship between the protected conduct and the adverse action,

in that the adverse action would not have occurred but for the inmate's protected activity.  *Strope v. Cummings*, 2010 WL 2294524 (10th Cir. June 9, 2010) (unpublished), *citing Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *see also Dawson v. Johnson*, 255 Fed.Appx. 713, 716 (10th Cir. 2008) ("To establish a claim for retaliation, a plaintiff must show that but for the retaliatory motive, the incidents to which he refers would not have taken place").  The inmate must make this showing by pleading <u>specific</u> facts demonstrating the causal connection. *Peterson*, 149 F.3d at 1144.

Here, the Court finds that the Second Amended Complaint does not plead specific facts showing a causal connection between Mr. Herrera's grievance against Mr. Webster and Dr. Fortunato's response.  As noted above, the Second Amended Complaint is relatively scant on this point, alleging only that, upon Mr. Herrera's "information and belief," Dr. Fortunato's diagnosis was "the result of or a reaction to the grievance."  The Court finds this language insufficiently conclusory.  Mr. Herrera does not identify the facts that lead him to this belief; he simply asserts the bare conclusion that the diagnosis was "the result of" the grievance.  This conclusory pleading fails to carry Mr. Herrera's burden of pleading facts, not conclusions.[7]

---

[7]Mr. Herrera elaborates on the retaliation claim at some length in his response to the motion.  He explains that, although the grievance procedure is supposed to be resolved within a 105 day period, it often takes significantly longer.  He goes on to explain that although the grievance against Mr. Webster was filed on December 15, 2008, Dr. Fortunato had "only recently answered the Step 2 grievance" when, on May 29, 2009, he diagnosed Mr. Herrera as having no need for medical treatment or accommodations.

Notwithstanding his *pro se* status, the Court is reluctant to treat Mr. Herrera's response brief as constructively amending the Second Amended Complaint.  Allowing a plaintiff to constantly revise and amend the articulation of his claims in his pleadings by means of assertions in briefs puts the defendant at a profound disadvantage, as the claims become a moving target.  As set forth above, *pro se* parties are entitled to have the Court liberally construe their pleadings to overlook language and formatting errors, but they are not relieved of the substantive and procedural burdens that would be imposed on a party represented by counsel.  Here, the Court

Accordingly, Dr. Fortunato is entitled to dismissal of the third claim, to the extent it sounds in retaliation.

Thus, the Defendants' motion to dismiss is granted in part, insofar as all claims against Defendants Laurence, Beecroft, and Zavares are dismissed, as are Mr. Herrera's common-law negligence/malpractice claims and his retaliation claim against Dr. Fortunato. The motion is denied with regard to Mr. Herrera's 8ᵗʰ Amendment claims against Dr. Fortunato and Ms. Dowis, and those claims will proceed.

### E. Request for interpreter

On March 23, 2010, Mr. Herrera moved (# 40) for a court-appointed interpreter to be present at the Preliminary Scheduling Conference before the Magistrate Judge on April 12, 2010. Mr. Herrera explained that he does not speak English, and cannot afford to hire an interpreter to assist him. (The Court assumes that Mr. Herrera's well-written pleadings are the work of a bilingual inmate assisting Mr. Herrera.) He states that, without an interpreter present, he will be unable to participate in the Conference. In an April 5, 2010 minute order (# 44), the Magistrate Judge denied Mr. Herrera's request, observing that 28 U.S.C. § 1827(b) entitles parties to the

---

would not allow a party represented by counsel to attempt to supplement deficient pleadings by means of additional factual allegations contained in a brief in response to a motion to dismiss, and thus, the Court will not do so with Mr. Herrera. Accordingly, the Court will adjudicate the sufficiency of Mr. Herrera's retaliation claim as it appears in the Second Amended Complaint, not as Mr. Herrera articulates it in his response brief.

In any event, the Court would find that even the response brief fails to set forth specific facts showing a causal connection between the grievance and Dr. Fortunato's diagnosis. Mr. Herrera's brief states only that Dr. Fortunato had "only recently" answered the grievance when he gave the diagnosis. "Only recently" is itself conclusory, giving the reader no way to know whether Mr. Herrera considers "recently" to be a day, a week, a month, or four months. Because Mr. Herrera's brief offers only conclusory language to demonstrate the causal nexus, it is insufficient to remedy the deficient pleading of the retaliation claim.

assistance of an interpreter only in "proceedings instituted by the United States." The Magistrate Judge found that "no statute exists requiring the provision [at public expense] of an interpreter in civil actions" brought by non-English speakers.

On April 23, 2010, Mr. Herrera filed what the Court construes the be Objections **(# 52)** to the Magistrate Judge's order pursuant to Fed. R. Civ. P. 72(a). He argues that the "instituted by the United States" language of 28 U.S.C. § 1827(b) refers to cases "conducted in" federal courts, not just cases that were commenced by the United States. He further argues that failing to provide him with an interpreter would be unjust.

Rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, the Plaintiff's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

At the outset, the Court observes that Mr. Herrera's Objections are technically moot. Mr. Herrera's motion specifically requested the appointment of an interpreter for purposes of the April 12, 2010 Scheduling Conference, which has already occurred **(# 45)**.[8] Thus, Mr. Herrera's facial objection to not having an official translator present for that Conference is moot.

---

[8]The minutes reflect that David Donis, "translator/inmate from Sterling Correctional Facility" provided translation for Mr. Herrera at this Conference.

Nevertheless, because it is conceivable that this issue will continue to recur in this case, the Court will address the merits of the Objections.

28 U.S.C. § 1827(b) provides, in pertinent part, that "The Director [of the Administrative Office of the U.S. Courts] shall prescribe, determine, and certify the qualifications of persons who may serve as certified interpreters [for] persons who speak only or primarily a language other than the English language, in judicial proceedings instituted by the United States." Although the plain language of the statute refers only to the obligations of the Director of the Administrative Office to certify interpreters, many courts have construed it as authorizing the appointment of interpreters in appropriate cases. Nevertheless, as best this Court can determine, no court has construed the "instituted by the United States" language in the statute as Mr. Herrera does. To the contrary, based on this Court's research, the only court to have adjudicated the precise question presented here resolved the issue in the same manner as the Magistrate Judge did. *In re Morrison*, 22 B.R. 969, 970 (Bankr. Oh. 1982) (finding that court had no obligation to provide interpreter at Initial Meeting of Creditors, as bankruptcy proceeding was not "initiated by the United States").

Mr. Herrera's argument in his Objections is premised entirely on a textual analysis of §1827, focusing primarily on § 1827(j), which defines the term "judicial proceedings instituted by the United States." The statute provides that this term "refers to all proceedings, whether criminal or civil, including pretrial and grand jury proceedings . . . conducted in, or pursuant to the lawful authority and jurisdiction of a United States District Court." In relying on this language, Mr. Herrera fails to recognize that the clear purpose of this definition is to address the ambiguous portion of the phrase – "judicial proceedings" – and not to define the unambiguous

portion of the phrase – "instituted by the United States." *See U.S. v. Hasan*, 526 F.3d 653, 662 (10th Cir. 2008) (explaining that definition section was provided to clarify Congress' intent that obligation to provide interpreter extended beyond "civil or criminal actions initiated by the United States" to include ancillary matters, such as grand jury proceedings, in government-instituted cases). Mr. Herrera's argument is weakened by language in that definition that ensures that the phrase is interpreted to specifically include "proceedings upon a petition for a writ of habeas corpus initiated in the name of the United States by a relator." 28 U.S.C. § 1827(j). If, as Mr. Herrera contends, the phrase applies to <u>all</u> civil or criminal proceedings in federal courts, regardless of who initiated it, there would be no need for language expressly providing that *habeas corpus* actions "initiated in the name of the United States by a relator" fell within that definition. Because the Court must not interpret a statute in a way that would render a portion of its language superfluous, *see e.g. Corley v. U.S.*, 129 S.Ct. 1558, 1566 (2009), the only reasonable interpretation of § 1827(j) is as defining the term "judicial proceedings," not purporting to contravene the clear and unambiguous requirement that an action be "initiated by the United States" before the statutory obligation to supply an interpreter arises. In this respect, the Court cannot say that the Magistrate Judge's ruling on this issue was clearly erroneous or contrary to law.

That being said, even if there is no statutory obligation for the Court to supply an interpreter to a civil litigant, there remains the question of whether the failure to do so implicates fundamental due process concerns. The appointment of an interpreter, whether under § 1827 or by virtue of the Court's inherent authority as a matter of due process, is a matter confined to the sound discretion of the Court, and the exercise of that discretion should focus on whether the

failure to supply an interpreter makes the proceedings "fundamentally unfair." *See U.S. v. Belfast*, 611 F.3d 783, 821 (11th Cir. 2010). Although the Magistrate Judge correctly noted that the public fisc should not be invaded to secure benefits for private civil litigants, that concern addresses only one side of the balance; exercise of the discretion afforded the Court also requires consideration of the extent to which the proceedings will be fair to the litigants and in furtherance of the interests of justice if an interpreter is not provided. Because the matter is confined to the sound discretion of the Court, the Court has wide latitude in striking the appropriate balance between the interests of justice and the responsibility of private civil litigants to fund their own cases.[9] The Magistrate Judge's balancing of those interests at the Scheduling Conference by permitting an uncertified interpreter supplied by Mr. Herrera to supply him with translation services he required at no additional cost to the public was certainly within the range of proper judicial discretion. If such an accommodation is not available in future proceedings where Mr. Herrera's in-person or oral presence is required,[10] the Magistrate Judge must nevertheless exercise the discretion conferred to address the issue in a way that strikes a reasonable balance between the competing interests.

Accordingly, the Court overrules Mr. Herrera's Objections and affirms the Magistrate Judge's ruling.

---

[9]For example, it may be that an incarcerated inmate requesting appointment of the interpreter could be charged the costs of that interpreter as part of the "court fees," arguably recoverable through periodic payments by the inmate under 28 U.S.C. § 1915(b)(1).

[10]To date, Mr. Herrera has not sought interpretation services for proceedings that take place entirely in writing. The Court does not opine as to how such a request might reasonably be handled.

### F. Mr. Webster

Mr. Herrera moves **(# 61)** for reconsideration of the Court's April 22, 2010 Order **(# 51)** dismissing Mr. Herrera's claims against Mr. Webster without prejudice for failure to effect timely service. In the instant motion, filed on July 21, 2010, Mr. Herrera contends that he has now obtained an address where he believes service upon Mr. Webster can be effected and requests that the Court vacate the dismissal against Mr. Webster and, upon achieving service, allow Mr. Herrera to proceed with his claims.

The Court denies the request. This action was commenced in May 2009. Fed. R. Civ. P. 4(m) required Mr. Herrera to then effect service upon the defendants within 120 days. In December 2009, the Magistrate Judge ordered Mr. Herrera to show cause **(# 31)** why service upon Mr. Webster had not yet been effected. Mr. Herrera's response to that Order was due on January 8, 2010, and that date passed without response from Mr. Herrera. On February 2, 2010, the Magistrate Judge, noting Mr. Herrera's silence, formally recommended **(# 35)** dismissal of the claims against Mr. Webster for failure to timely effect service. Mr. Herrera filed Objections **(# 38)** to this Recommendation, supplying a host of reasons for his failure to respond to the Order to Show Cause (ranging from language difficulties to incarceration in punitive segregation for disciplinary infractions to the lack of assistance from CDOC legal staff), explaining that he still intended to obtain Mr. Webster's address through alternative means. Although the Objections set forth a plan Mr. Herrera intended to pursue to obtain Mr. Webster's address, they did not offer any explanation as to why Mr. Herrera had not begun that process earlier, nor what efforts he had taken since November 24, 2009, the date that the Marshal reported an inability to serve Mr. Webster at the address supplied by Mr. Herrera. As a result, this Court rejected Mr.

Herrera's Objections and request for additional time to serve Mr. Webster and dismissed the claims against Mr. Webster without prejudice.

Mr. Herrera's recent discovery of an address where Mr. Webster <u>might</u> be amenable to service does not warrant revisiting the Court's prior dismissal. Mr. Herrera does not suggest that the Court's prior decision was incorrect or ill-advised; he simply contends that, at long last, he may be able to finally serve Mr. Webster. In essence, then, he is requesting vacatur of the Court's prior dismissal and an extension of the Rule 4(m) deadline for service by more than one year. Given Mr. Herrera's failure to explain why he could not have carried out his plan to obtain Mr. Webster's address earlier – *i.e.* during the period from November 2009 to July 2010, the Court finds that Mr. Herrera has not demonstrated "good cause" for an extension.

The purpose of Rule 4(m) and the requirement of expeditious service is to ensure that the case proceeds promptly against those defendants against whom service can be made. Much as the train must eventually leave the station with those aboard – and leave behind those who have not arrived on time – this litigation began moving forward against those Defendants that Mr. Herrera was able to promptly serve, and Mr. Webster was not among them. As a result, substantive motions directed at the Second Amended Complaint have been filed and resolved, a Scheduling Conference has been convened, and discovery has commenced (and, may likely conclude as scheduled on January 1, 2011), all without Mr. Webster's participation. Mr. Herrera's request that he now be permitted to attempt to get Mr. Webster onto the train, so to speak, simply comes too late – the train is too far down the track at this point. Were Mr. Herrera to obtain service upon Mr. Webster now, Mr. Webster must still be given the opportunity to challenge the sufficiency of the pleadings against him and to participate in discovery (both as to

Mr. Herrera and, perhaps, as to his remaining co-Defendant, Dr. Fortunato). This, in turn, would require the Court to either suspend deadlines for the Dr. Fortunato – stopping the train that he is on and delaying his arrival at his destination – or require the Court to simultaneously run two trains, one proceeding apace for Dr. Fortunato and one at accelerated speed for Mr. Webster, in the hopes that it can catch Dr. Fortunato's train before it reaches the destination. The Court finds that allowing Mr. Webster to be brought back into the litigation at this advanced stage presents an undue burden on both Dr. Fortunato and the Court.

Mr. Herrera's claims against Mr. Webster were dismissed without prejudice. If Mr. Herrera wishes to pursue those claims, he may attempt to do so by commencing a new action against Mr. Webster. That action can then proceed at its own pace, without disrupting any others.[11]

### CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 33)** is **GRANTED IN PART**, insofar as all claims against Mr. Laurence, Dr. Beecroft, and Mr. Zavares, and Mr. Herrera's negligence/malpractice claim and retaliation claim against Dr. Fortunato are **DISMISSED**, and **DENIED IN PART**, insofar as Mr. Herrera has adequately stated § 1983 claims for 8th Amendment violations against Dr. Fortunato and Ms. Dowis, and those claims will proceed. As discussed above, the claims against Mr. Laurence, Dr. Beecroft, and Mr. Zavares, each turn on conduct independent of that alleged against Dr. Fortunato and Ms. Dowis, and thus,

---

[11]The parties have not addressed the running of the statute of limitations against Mr. Webster, but Mr. Herrera's pleadings indicate that his claims against Mr. Webster arose in or about November 2008. Thus, it appears that there is still a small amount of time for Mr. Herrera to assert timely claims against Mr. Webster in a new action.

the Court concludes that there is no just reason to delay entry of judgment against these Defendants pursuant to Fed. R. Civ. P. 54(b). Accordingly, tthe Clerk of the Court shall enter judgment in favor of Defendants Laurence, Beecroft, and Zavares pursuant to Fed. R. Civ. P. 54(b), and the caption of the case shall be amended to omit reference to these Defendants. Mr. Herrera's Objections **(# 52)** are **OVERRULED**, and the Magistrate Judge's April 5, 2010 Order **(# 44)** is **AFFIRMED**. Mr. Herrera's Motion to Reinstate **(# 61)** dismissed Defendant Webster, which the Court treats as a motion for reconsideration, is **DENIED**.

Dated this 28th day of September, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

28